**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00921-NYW

BRENDA ANDERSON CHARITY,

      Plaintiff,

v.

COUNTY OF EL PASO,
TERRY MAKETA, *Former El Paso County Sheriff*,
PAULA PRESSLEY, *Former Under Sheriff*,
BILL ELDER, *El Paso County Sheriff*,
DEPUTY LONG,
NURSE, *Administered Medication*,
CORRECT CARE SOLUTIONS,
CORRECTIONAL HEALTH CARE COMPANIES,
DR. OOZY,
JOHN, *Supervisor Night Nurse*,
KATHY JONES,
DEPUTY BORK,
DR. JONES, and
DR. HERR,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Defendants County of El Paso ("County"), Terry Marketa, Paula Pressley, Biller Elder, Deputy Long, and Deputy Bork's (collectively, "County Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 22) (the "Motion"). [#31, filed Nov. 3, 2016]. Pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated November 21, 2016 [#36], the Motion is before the undersigned Magistrate Judge. The court concludes that oral argument will not materially assist in the resolution of this matter.

Accordingly, upon review of the Motion, the case file, and the applicable law, the court hereby GRANTS IN PART and DENIES IN PART the Motion for the reasons stated below.

## BACKGROUND

Plaintiff Brenda Anderson Charity ("Plaintiff" or "Ms. Charity") is a prisoner in the custody of the Colorado Department of Corrections, currently incarcerated at the Denver Women's Correctional Facility ("DWCF"). *See* [#1]. On April 25, 2016, she filed her *pro se*[1] complaint pursuant to 42 U.S.C. § 1983 alleging that her Eighth Amendment rights were violated while detained at the El Paso County Jail ("the Jail").[2] *See* [*id.*]. Specifically, the individual Defendants were deliberately indifferent to her serious medical needs (Claim I – Deliberate Indifference) and, because Defendants Maketa, Pressley, and Elder's failed to train or supervise their employees, they should also be liable for violating her constitutional rights (Claim II – Failure to Train). [*Id.*; #22]. Plaintiff also alleges a *Monell* claim (Claim III) against the County. [#22]. She has been granted leave to proceed *in forma pauperis*. *See* [#4].

Plaintiff alleges that while she was incarcerated at the Jail, numerous doctors, Drs. Oozy, Herr, and Jones, prescribed her various medications, despite being an active and healthy woman prior to her incarceration. *See* [#22 at 12]. One of these medications was the anti-psychotic drug Risperdal. [*Id.*]. Plaintiff alleges that these doctors should never have prescribed her Risperdal because it may pose serious side effects to elderly patients with heart or blood vessel disease—

---

[1] Because Ms. Charity proceeds *pro se*, this court construes her pleadings liberally and without acknowledging or correcting grammatical errors. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, the court does not act as her advocate, and holds her to the same substantive law and procedural rules as a represented party. *See Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[2] Though not stated as such in her original and Amended Complaint, Ms. Charity was a pre-trial detainee held in the El Paso County Jail at the time of the circumstances give rise to this action. *See* [#1 at 5; #31 at 7].

Ms. Charity is 70 years old and suffers from high blood pressure. [*Id.*]. Nevertheless, Plaintiff alleges Dr. Oozy prescribed her Risperdal. [*Id.*].

On April 22, 2014, Plaintiff alleges to have suffered an allergic reaction to Risperdal. [*Id.*]. Plaintiff's throat began to itch and her tongue began to swell. [*Id.*]. Plaintiff informed Nurse John, who then gave Ms. Charity a Benadryl to ease the swelling. [*Id.*]. Nurse John also informed Plaintiff to submit a kite to Dr. Oozy requesting that he stop prescribing Risperdal immediately, which Plaintiff did and Nurse John delivered. [*Id.* at 12–13].

Two days later, on April 24, 2014, Plaintiff informed the nurse dispensing morning medications ("Nurse, *Administered Medication*" or "Defendant Nurse") that she could not take the Risperdal because of her allergic reaction; however, the nurse crushed all of Plaintiff's medications into a powder and forced Plaintiff to ingest the entire powder. [*Id.* at 13]. Plaintiff claims that as a result, she began experiencing severe symptoms of an allergic reaction, and that Deputy Bork was present at this time. [*Id.*]. For example, Ms. Charity alleges that she had difficulty breathing, had an irregular heartbeat, was itchy and dizzy, developed hives, and experienced swelling in her throat, face, and tongue. [*Id.*].

Plaintiff alleges that she sought help for her worsening condition, but that Deputy Long refused to help Plaintiff or seek assistance, stating that Ms. Charity was being "too needy." [*Id.*]. Further, Plaintiff alleges that Deputy Long informed her that she would have to "wait like everyone else," and allegedly blocked her from seeking help by standing in her way. [*Id.*]. After waiting for more than an hour, Plaintiff was eventually taken to Memorial Hospital. [*Id.*]. Plaintiff remained in the hospital for two days and physicians believed she had suffered a stroke. [*Id.*]. Upon returning to the Jail, Plaintiff received a walker, as ordered by the hospital physicians, but did not receive the prescribed physical therapy. [*Id.*].

Plaintiff alleges that the allergic reaction to Risperdal caused her to suffer several physical impairments such as difficulty swallowing, damage to her right eye that now droops, drooling, memory loss, impaired speech, and weakness down the left side of her face. [*Id.*]. Plaintiff seeks damages of $50,000,000 from each named Defendant. [*Id.* at 13, 27–28].

On May 2, 2016, Magistrate Judge Gordon P. Gallagher ordered Ms. Charity to file an amended prisoner Complaint. *See* [#6]. Magistrate Judge Gallagher advised Plaintiff that her initial Complaint failed to identify the specific factual allegations that supported her claims, against which of the named Defendants she was asserting each claim, and how each Defendant violated her constitutional rights. *See* [*id.*]. Magistrate Judge Gallagher granted Plaintiff several extensions of time to submit her Amended Complaint, which became due on September 1, 2016. *See* [#9; #17].

On September 13, 2016, the Honorable Lewis T. Babcock issued an Order to Dismiss in Part Plaintiff's Complaint, because Plaintiff had not filed her Amended Complaint pursuant to Magistrate Judge Gallagher's Order. *See* [#18]. Judge Babcock dismissed Plaintiff's claims against El Paso County Sheriff Department, El Paso County Sheriff Medical Department, Correct Care Solutions, Correctional Health Care Companies, Dr. Howard, Dr. Herr, Dr. David Jones, Dr. Oozy, Paula Pressley, Nurse Farmer, Kathy Jones, and Nurse John as legally frivolous. *See* [*id.* at 9–10]. Judge Babcock, however, ordered that Plaintiff's remaining claim against Deputy Long be drawn "to a presiding judge and, if applicable, to a magistrate judge." [*Id.* at 10].

On September 14, 2016, the court docketed Plaintiff's Amended Complaint. *See* [#22]. However, Plaintiff dated the Amended Complaint as September 1, 2016, and her Certificate of Mailing indicated that she mailed a copy to the Office of the Clerk on that date. *See* [*id.* at 28–

29].  On October 3, 2016, this Magistrate Judge issued a Minute Order that directed the Clerk of the Court to accept Ms. Charity's Amended Complaint [#22], as the operative Complaint, and directed the named Defendants to respond accordingly.  *See* [#26].  At the time that the court docketed Plaintiff's Amended Complaint, it did not conduct a substantive review of the amended claims pursuant to this District's Local Rules or 28 U.S.C. § 1915.

On November 3 and 4, 2016, respectively, the County Defendants filed the Motion and a Motion to Stay.  *See* [#31; #32].  The undersigned granted the Motion to Stay, staying discovery pending the disposition of the instant Motion.  [#42].  Plaintiff filed a response to the Motion and the County Defendants a reply.  [#39; #40].  The Motion being ripe for resolution, the court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall*, 935 F.2d at 1110 (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in

a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege '(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.'" *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005) (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156–57 (10th Cir. 2001). Relatedly, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant[s] plausibly violated h[er] constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citation omitted).

## ANALYSIS

## I.      Statute of Limitations

For claims brought pursuant to § 1983, state statutes of limitations supply the limitations period, while federal law governs the accrual of such claims. *See Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Here, the two-year limitations period under Colo. Rev. Stat. § 13-80-102(g) governs Ms. Charity's claims. *See Onyx Properties LLC v. Bd.*

*of Cty. Comm'rs of Elbert Cty.*, 916 F. Supp. 2d 1191, 1196 (D. Colo. 2012). Her claims accrued when she knew or should have known that the named Defendants violated her constitutional rights. *See Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017).

The County Defendants move to dismiss Plaintiff's Amended Complaint because she failed to file her complaint within the applicable two-year limitation period.[3] [#31 at 10; #40 at 2]. Specifically, the Amended Complaint alleges events occurring on April 22 and 24, 2014, respectively, yet Plaintiff did not file her initial complaint until April 25, 2016. [#31 at 10; #40 at 2]. While true that the Clerk of the Court did not file Plaintiff's initial complaint until April 25, 2016, outside the two-year limitation period, this fact alone does not necessitate dismissal of Ms. Charity's case. This is because, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) (extending the "prison mailbox rule" articulated in *Houston v. Lack*, 487 U.S. 266, 276 (1988) to inmates' § 1983 complaints). Here, the envelope attached to Ms. Charity's initial complaint indicates that DWCF's internal mail system received Ms. Charity's initial complaint on April 21, 2016, *see* [#1-1], thereby satisfying the "prison mailbox rule" and the two-year limitations period. Accordingly, the Motion is **DENIED** on statute of limitations grounds.

## II.     Claim I – Deliberate Indifference

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In

---

[3] The County Defendants argue for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure; however, a statute of limitations question is appropriately resolved under Rule 12(b)(6). *See Glaser v. City & Cty. of Denver, Colo.*, 557 F. App'x 689, 698 (10th Cir. 2014).

addition, pretrial detainees are entitled to the same protections under the Fourteenth Amendment due process clause. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted). To establish a prison official's constitutional liability, a plaintiff must satisfy both the objective and subjective components of the deliberate indifference test. *See generally Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The objective component requires Ms. Charity to allege objective facts that demonstrate that the deprivation is "sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Although the County Defendants apparently concede that the Amended Complaint satisfies the objective component, the court independently concludes that Plaintiff's alleged allergic reaction and associated symptoms constitute a sufficiently serious medical need. *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("We have held that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotations and citation omitted)).

The subjective component requires the plaintiff to produce evidence of the defendant's culpable state of mind, *i.e.*, to establish that the defendant(s) knew the plaintiff faced a substantial risk of harm, yet disregarded that risk. *Estelle*, 429 U.S. at 106; *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted). To satisfy this element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires more than mere negligence." *Sealock*, 218 F.3d at 1211; *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016) (comparing the subjective component to

recklessness in criminal law, where, to act recklessly, a person must "consciously disregard a substantial risk of serious harm."). Whether the defendant(s) had the requisite knowledge of a substantial risk of serious harm may be inferred from circumstantial evidence, which may be satisfied upon a showing that the serious medical need was "obvious." *See DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (quotations and citations omitted).

The County Defendants move to dismiss Claim I because the Amended Complaint fails to allege a "culpable state of mind on the part of any County Defendant." [#31 at 11]. Rather, the Amended Complaint contains mostly legal conclusions and, any allegations concerning Deputy Long, fail to establish that Deputy Long consciously disregarded a substantial risk of serious harm to Plaintiff. [*Id.* at 12]. In response, Plaintiff argues that Deputies Long and Bork, "Deputy Dawg,"[4] and Defendant Nurse knew of the risk Risperdal posed to Plaintiff's health, yet administered the drug and failed to provide adequate medical attention following her allergic reaction. *See* [#39 at 2]. In addition, Plaintiff contends that Deputy Long told her she was being "too needy" and would have to wait like the others before receiving attention. [*Id.*].

First, upon review of the Amended Complaint, the court agrees with the County Defendants that Plaintiff fails to allege Defendants Maketa, Pressley, Elder, or Bork's culpable state of mind.[5] [#31 at 11]. Regarding Defendants Maketa (the former Sheriff of El Paso County) and Pressley (the former Undersheriff), the Amended Complaint alleges that both were

---

[4] A non-party whom the County Defendants assert does not exist. [#40 at 2].

[5] Plaintiff sues these Defendants and Deputy Long in their individual and official capacities, seeking $50,000,000 from each Defendant. [#22]. Claims against state officials in their official capacities for monetary damages are construed as claims asserted against the State of Colorado, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991), and are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985). And, although Plaintiff is not precluded from seeking prospective injunctive relief against the individual Defendants in their official capacities, *see Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998), she does not appear to do so; thus, her claims against Defendants Maketa, Pressley, Elder, Bork and Long in their official capacities are DISMISSED with prejudice.

deliberately indifferent to Plaintiff's serious medical needs because they "were subjectively aware that Ms. Charity faced a serious risk," and because they hired employees that were "under-trained" or that consciously disregarded Ms. Charity's serious medical needs. [#22 at 3–4; 16–17]. Similarly, the Amended Complaint contains only one reference to Deputy Bork, *i.e.*, that he was present when Plaintiff consumed her crushed medication. [#22 at 13]. However, Plaintiff's conclusory allegations fail to satisfy the subjective prong of the deliberate indifference analysis as to these Defendants. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) ("The subjective prong examines the state of mind of the defendant, asking whether the official knew of and disregarded an excessive risk to inmate health or safety." (internal quotations, brackets, and citation omitted)).

The court reaches a different conclusion as to claims alleged against Deputy Long individually. The Amended Complaint alleges that, shortly after consuming her crushed medications, Plaintiff began experiencing difficulty breathing, itchiness, dizziness, hives, and swelling of the throat, face, and tongue. [#22 at 13]. The Amended Complaint continues that when Plaintiff tried to tell Deputy Long about her symptoms, Deputy Long "dismissed Ms. Charity as being 'too needy,'" and apparently blocked Ms. Charity's way as she sought medical attention. [*Id.*]. Because the court concludes that Ms. Charity's symptoms constituted an objectively serious medical need, and the court accepts the facts as pled in Ms. Charity's Amended Complaint as true for the purposes of this instant Motion, the court also concludes that Deputy Long's dismissal and alleged interference with Ms. Charity's ability to receive medical assistance *after* Plaintiff informed Deputy Long of her symptoms, permits an inference, at this juncture, that Deputy Long was aware of Plaintiff's serious medical need yet disregarded that risk. *See Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (observing that in this Circuit, an

inmate can show deliberate indifference where a prison official prevents an inmate from receiving medical treatment or denies access to medical personnel capable of evaluating the inmate's condition).

In addition, although the County Defendants appear to raise qualified immunity as a defense, their argument appears to focus solely on Plaintiff's *Monell* claim. *See* [#31 at 13–14 ("Assuming Plaintiff has alleged a constitutional violation, her entity related allegations are even more limited than her individual liability allegations")]. Qualified immunity only applies to individual Defendants, not entity Defendants. *See Beedle*, 422 F.3d at 1069 (explaining that qualified immunity applies only to government officials in their individual, not official, capacity, and does not attach to government entities). Nonetheless, the court concludes that Deputy Long as an individual is not entitled to qualified immunity at this stage given the nature of Plaintiff's allegations. This is because "the Court is not required to grant relief simply because it was requested," and because the allegations, taken as true, support an inference that Deputy Long interfered with Plaintiff's ability to seek medical assistance—a right that was clearly-established. *See Salazar v. White*, No. 14-CV-02081-RM-CBS, 2015 WL 5781650, at *4 (D. Colo. Oct. 5, 2015) (denying qualified immunity, despite the plaintiff's failure to respond to the defendant's motion to dismiss, because "the law was clearly established such that a reasonable person in Defendant's position would have known that the use of violent physical force on a pretrial detainee who is not resisting and is handcuffed would violate that person's Fourteenth Amendment rights.").

Based on the foregoing, the Motion is **GRANTED in part** and **DENIED in part** as to Claim I. Specifically, Claim I is **DISMISSED without prejudice** as to Defendants Maketa, Pressley, Elder, and Bork, but **REMAINS** against Deputy Long. [6]

## III.    Claim II - Failure to Train

To prevail on a failure to train and supervise claim under § 1983, a plaintiff must demonstrate an "affirmative link" between the supervisor-defendant and the constitutional violation—the supervisor's "mere knowledge" of his employee's conduct is insufficient. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Iqbal*, 556 U.S. at 677). Accordingly, a plaintiff must establish: (1) the defendant's personal involvement; (2) a causal connection; and (3) a culpable state of mind. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Again, "[§] 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

Here, the Amended Complaint contains only conclusory allegations in support of a failure to train claim. Specifically, Plaintiff alleges that Defendants Maketa, Pressley, and Elder promulgated (or failed to promulgate) the policies, practices, and regulations for the El Paso County Sheriff's Department and its employees, and were responsible for the hiring of employees. *See* [#22 at 2, 14]. The Amended Complaint, however, fails to allege an affirmative link between these Defendants' conduct, *see* [#31 at 12–13], and, instead, Plaintiff appears to base her failure to train claim on a theory of respondeat superior, which § 1983 prohibits. *See*

---

[6] Ms. Charity also appears to raise an Equal Protection claim against certain Defendants; however, the basis for this claim is unclear and the court hereby DISMISSES any such claim. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated."); *see also Curley v. Perry*, 246 F.3d 1278, 1282–85 (10th Cir. 2001) (holding that a court may *sua sponte* dismiss an inmate's complaint under § 1915(e)(2)(B)(ii) and Rule 12(b)(6) when it is patently obvious that she could not prevail on the facts alleged, and amendment would be futile).

*Schneider*, 717 F.3d at 767.  Accordingly, the Motion is **GRANTED** as to Claim II, and Claim II is **DISMISSED without prejudice**.

## IV.     Claim III – *Monell* Liability

A municipality cannot be liable under § 1983 for constitutional violations when there is no underlying constitutional violation by any of its officers, nor can it be held liable under the theory of vicarious liability for the constitutional deprivations of its officers.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002).  "Rather, to establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged."  *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).  Ms. Charity may do so by alleging that the County, including Defendants Maketa and Elder as policymakers, failed to adequately train or supervise its employees, and that its failure results from deliberate indifference to the injuries that may be caused.  *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).  However, it is not enough for Plaintiff to point to a single violation of her federal rights—she must allege that the County "failed to train its employees to handle recurring situations presenting obvious potential for such a violation."  *Allen v. Muskogee*, 119 F.3d 837, 841–42 (10th Cir. 1997).

The County Defendants move for dismissal of Claim III because the Amended Complaint fails to allege an underlying constitutional violation, and, even if it did, Plaintiff fails to allege facts, other than conclusory allegations, to support a *Monell* claim.  [#31 at 12].  The County Defendants further argue that the Amended Complaint fails to allege personal participation in the alleged constitutional violation by Defendants Marketa, Pressley, or Elder, that these Defendants caused the alleged constitutional violation, or that the County had notice of the alleged constitutional violation yet disregarded it.  *See* [*id.* at 13–14].

Here, the court respectfully agrees with the County Defendants that the Amended Complaint fails to state a plausible *Monell* claim. First, as discussed above, the Amended Complaint simply alleges that Defendants Marketa, Pressley, and Elder were responsible for promulgating (or failing to promulgate) the Jail's policies and procedures, and for hiring Jail employees. *See* [#22 at 14–15]. Second, the Amended Complaint alleges that the "County of El Paso and the City of Colorado Springs, Colorado should be held accountable for the mistaken dosage of Risperdal that was administered by the young white female who was dispensing the morning medication" at the Jail. [#22 at 6, 14]. However, these conclusory allegations fail to allege a plausible *Monell* claim against the County, as there is no allegation of a custom or policy and Plaintiff fails to allege that the County failed to train its employees to handle reoccurring constitutional violations. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A municipality is not liable for the constitutional violations of its employees simply because such a violation has occurred; a policy or custom must have actually caused that violation."). Similarly, Plaintiff's conclusory allegation that the Jail is under-staffed and over-crowded, creating a risk of substantial harm to detainees, also fails to allege a plausible *Monell* claim against the County. *See Garcia*, 768 F.2d at 307–08 (holding that a jail's "gross deficiencies" in staffing and medical procedures may constitute deliberate indifference); *but see Hall*, 935 F.2d at 1110 (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Accordingly, the Motion is **GRANTED** as to Claim III, and Claim III is **DISMISSED without prejudice**.

## V. The Remaining Defendants

Per his May 2, 2016 Order, Magistrate Judge Gallagher instructed Plaintiff to cure several deficiencies in her initial complaint. *See* [#6]. Specifically, Magistrate Judge Gallagher

informed Plaintiff that *Monell* governed her claims against Correctional Health Care Companies ("CHCC") and Correct Care Solutions ("CCS"), that she must allege personal participation in the alleged constitutional violation by the individual Defendants, and that she cannot maintain a constitutional claim based on a medical personnel's negligence. [*Id.* at 5–8]. However, because Plaintiff failed to file her Amended Complaint by September 1, 2016, Judge Babcock dismissed Plaintiff's claims pursuant to 28 U.S.C. § 1915 against all named Defendants except for Deputy Long. [#18 at 9–10]. Yet, per this court's Minute Order dated October 3, 2016, Plaintiff's Amended Complaint [#22] was accepted for filing. *See* [#26].

Plaintiff's Amended Complaint names additional Defendants who were not included in the instant Motion, *e.g.*, Defendant Nurse, CCS, CHCC, Nurse John, Kathy Jones, and Drs. Oozy, Jones, and Herr.[7] Because Plaintiff proceeds *in forma pauperis*, this court must dismiss any portions of the Amended Complaint that appear legally frivolous. *See* 28 U.S.C. § 1915A(b)(1). With this in mind, the court turns to the Amended Complaint's allegations against these Defendants to determine whether Plaintiff's claims "'lack[] an arguable basis either in law or in fact.'" *See Aguilar v. Colorado State Penitentiary*, 656 F. App'x 400, 402 (10th Cir. 2016) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

### A.  Drs. Herr and Jones

To start, the Amended Complaint alleges that Drs. Herr and Jones were deliberately indifferent to Plaintiff's serious medical needs because each failed to refer Plaintiff to a physical therapist, as ordered upon her release from the hospital. [#22 at 25–26]. The Amended

---

[7] Plaintiff attempts to sue many of these individual Defendants in their individual as well as official capacities for monetary damages. [#22]. However, as discussed, Plaintiff cannot recover monetary relief under § 1983 for claims against these Defendants in their official capacities. *See Kentucky*, 473 U.S. at 169–70. Therefore, Ms. Charity's official capacity claims against Drs. Oozy, Herr, and Jones; Nurse John, Kathy Jones, and Defendant Nurse are DISMISSED as legally frivolous pursuant to 28 U.S.C. § 1915A(b)(2).

Complaint does allege, however, that Ms. Charity received a walker upon her return from the hospital. [*Id.* at 13]. The Amended Complaint also mentions that it took four hours[8] before Plaintiff was transported to the hospital; however, there is no mention that Drs. Herr or Jones participated in the delay. *See* [*id.*]. Based upon the allegations in the Amended Complaint, Plaintiff fails to allege that Drs. Herr and Jones' failure to proscribe physical therapy was intentional or reckless. *See Boyett v. Cty. of Washington*, 282 F. App'x 667, 673 (10th Cir. 2008) ("[N]o constitutional violation occurs unless medical care is intentionally or recklessly denied."); *cf. Smith v. Tharp*, 97 F. App'x 815, 818 (10th Cir. 2004) (concluding that Mr. Smith failed to plead a claim for deliberate indifference, because the defendant-doctors' failure to proscribe physical therapy, despite a specialists instructions to do so, was, at best, "a disagreement with medical personnel as to the care he [was] receiving."). Accordingly, any claims against these Defendants are **DISMISSED** as legally frivolous.

### B. Dr. Oozy

The Amended Complaint alleges that Dr. Oozy was deliberately indifferent to Plaintiff's serious medical needs for several reasons. First, Dr. Oozy was deliberately indifferent by proscribing Plaintiff Risperdal; had Dr. Oozy read her medical charts or reviewed the possible side effects of Risperdal, Ms. Charity would not have suffered a severe allergic reaction. [#22 at 21]. However, as Magistrate Judge Gallagher explained, a medical personnel's negligence in proscribing medical treatment, even if constituting medical malpractice, "does not give rise to a constitutional violation." *Sherman v. Klenke*, 653 F. App'x 580, 587 (10th Cir. 2016). Therefore, to the extent Plaintiff bases her deliberate indifference claim against Dr. Oozy on his proscribing Risperdal, such a claim is **DISMISSED** as legally frivolous.

---

[8] Elsewhere, the Amended Complaint states it took between an hour to two hours. *See* [#22 at 13].

However, Plaintiff also alleges that Dr. Oozy delayed examining her for approximately thirty minutes after the onset of her severe allergic reaction, despite Kathy Jones' request for assistance. [#22 at 22–23]. Plaintiff contends that this delay in treatment caused her to suffer substantial harm, *e.g.*, unsteady gait, difficulty swallowing, damage to her right eye that now droops, drooling, memory loss, impaired speech, and weakness down the left side of her face. [*Id.* at 13, 23]. Further, Ms. Charity alleges that Dr. Oozy was aware of the risk Risperdal posed to her health and safety, yet delayed treating her. [*Id.* at 21]. Based on these allegations, the court concludes that Plaintiff's potential claim against Dr. Oozy, regarding his delay in evaluating her severe allergic reaction, is not legally frivolous and, thus, **REMAINS**. *See Al-Turki*, 762 F.3d at 1193 ("[T]he substantial harm caused by a delay in treatment may be a permanent physical injury, or it may be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." (internal quotations and citation omitted)); *accord Mata*, 427 F.3d at 755 ("Even a brief delay may be unconstitutional.").

C.    **Nurse John and Kathy Jones**

Regarding Nurse John, the Amended Complaint alleges that he was deliberately indifferent to Plaintiff's serious medical needs by proscribing her Benadryl for her initial allergic reaction to Risperdal, despite the fact that Nurse John is not a medical doctor. [#22 at 22–23]. However, the Amended Complaint continues that Nurse John instructed Plaintiff to submit a kite to Dr. Oozy requesting the cessation of Risperdal, and that Nurse John placed this kite in Dr. Oozy's box. *See* [*id.*]. Based on these allegations, the court concludes that Plaintiff fails to state a plausible deliberate indifference claim against Nurse John. *See Self*, 439 F.3d at 1233 ("So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind

cannot be met."). Accordingly, any claim against Nurse John is **DISMISSED** as legally frivolous.

The court reaches a similar conclusion as to Kathy Jones. The Amended Complaint alleges that Kathy Jones' delay in calling 911 when Plaintiff suffered her second, and more severe, allergic reaction on April 24, 2014, constitutes deliberate indifference. [#22 at 23–24]. Specifically, the Amended Complaint alleges that Kathy Jones waited to call 911 until Dr. Oozy finished "gouging into the feet of Ms. Charity (getting no results)." [*Id.* at 23]. While a delay in seeking appropriate medical treatment may constitute deliberate indifference, *see Sealock*, 218 F.3d at 1211, the Amended Complaint also alleges that Kathy Jones urged Dr. Oozy to examine Plaintiff or she would "send [Ms. Charity] out," presumably to the local hospital. [#22 at 22]. Accordingly, the court concludes that Plaintiff fails to allege that Kathy Jones' delay in calling 911 was due to her deliberate indifference to Plaintiff's serious medical needs. *See Mata*, 427 F.3d at 751. Thus, any claim against Kathy Jones is **DISMISSED** as legally frivolous.

### D. Nurse, *Administered Medication*

The Amended Complaint alleges that on April 24, 2014, during the distribution of morning medications, Ms. Charity informed the "young white female nurse," *i.e.*, Defendant Nurse, that she had an allergic reaction to Risperdal. [#22 at 19]. However, despite this statement, Defendant Nurse crushed all of Ms. Charity's medications, including Risperdal, into a powder and forced Ms. Charity to ingest the powder, causing a severe allergic reaction. [*Id.*]. The Amended Complaint continues that Defendant Nurse knew of the serious risk the wrong dose of Risperdal posed to Plaintiff's health, because Nurse John, Dr. Oozy, and Plaintiff had all warned Defendant Nurse previously. [*Id.* at 20].

While a prisoner's disagreement with a prescribed course of treatment does not amount to a constitutional violation, *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999), a medical professional may still be liable for her actions if taken with deliberate indifference to the prisoner's serious medical needs, *see Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001). Here, taking the Amended Complaint's allegations as true, the court concludes that Plaintiff alleges a plausible deliberate indifference claim against Defendant Nurse for forcing Plaintiff to consume Risperdal, despite being aware that Plaintiff was allergic. *See Martinez v. United States*, 812 F. Supp. 2d 1052, 1059 (C.D. Cal. 2010) ("[T]here is no Eighth Amendment violation when jail officials give the wrong medication to an inmate unless they were aware the inmate would react negatively to the medication."); *cf. James v. Fed. Bureau of Prisons*, 79 F. App'x 417, 419 (10th Cir. 2003) (holding that Mr. James failed to allege a deliberate indifference claim, because medical staff did not proscribe a medication they knew he was allergic to). Accordingly, Plaintiff's claim against Defendant Nurse **REMAINS**.

### E. Correctional Heath Care Companies and Correct Care Solutions

The Amended Complaint alleges that, at all relevant times, CHCC and CCS acted as employees of the County. [#22 at 6, 18, 19]. The only other allegation against CHCC and CCS is that the "young white female" nurse who administered the crushed medication, including the Risperdal, "was employed by the County [] and/or [CCS/CHCC] which were employed by the County[.]" [*Id.* at 19]. The Amended Complaint also alleges that the County had a policy of employing "persons who were under trained or with a culpable state of mind consisting of deliberate indifference to a prisoners [sic] health and or safety." [*Id.* at 18]. However, as Magistrate Judge Gallagher explained, for Plaintiff to allege a plausible *Monell* claim against CHCC and CCS, she must allege that CHCC and CCS had an official custom or policy that was

the direct cause of her alleged constitutional violation, not that CHCC and CCS employed a tortfeasor. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215–16 (10th Cir. 2003). Because the Amended Complaint fails to meet this requirement, the claims against CHCC and CCS are **DISMISSED** as legally frivolous.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) The County Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 22) [#31] is **GRANTED IN PART and DENIED IN PART**;

  (a) Claim I is **DISMISSED without prejudice** as to Defendants Maketa, Pressley, Elder, and Bork; however, Claim I **REMAINS** as to Deputy Long;

  (b) Claim II is **DISMISSED without prejudice**; and

  (c) Claim III is **DISMISSED without prejudice**;

(2) The stay of pretrial discovery ordered pursuant to [#42] is **VACATED**.

**IT IS FURTHER ORDERED** that:

(1) The Amended Complaint's claims against Drs. Jones and Herr, Kathy Jones, Nurse John, Correctional Heath Care Companies and Correct Care Solutions, and the Amended Complaint's <u>official capacity</u> claims against Dr. Oozy and Nurse, *Administered Medication* are **DISMISSED** as legally frivolous pursuant to 28 U.S.C. § 1915A(b);

(2) The Amended Complaint's <u>individual capacity</u> claims against Dr. Oozy and Nurse, *Administered Medication* **REMAIN**;

(3) The United States Marshal Service is **DIRECTED to SERVE** the Amended Complaint [#22] on Dr. Oozy and Defendant Nurse, *Administered Medication*;

(4)    The Clerk of the Court **is DIRECTED to MAIL** a copy of this Order to Plaintiff

at the following address, marked as legal mail:

Brenda Anderson Charity
# 168123
Denver Women's Correctional Facility (DWCF)
P.O. Box 392005
Denver, CO 80239

and

(5)    A Scheduling Conference will be set in this matter after the newly identified

Defendants are properly served and respond.


DATED: April 21, 2017                    BY THE COURT:


                                         s/ Nina Y. Wang
                                         Nina Y. Wang
                                         United States Magistrate Judge